**Dorothy E. TRAVITZ, Appellant,**

**v.**

**NORTHEAST DEPARTMENT ILGWU HEALTH AND WELFARE FUND; ILGWU Eastern States Health and Welfare Fund.**

Nos. 93–7277, 93–7334 and 93–7383.

United States Court of Appeals, Third Circuit.

Argued Nov. 8, 1993.

Decided Jan. 10, 1994.

David S. Wisneski, (argued), Angino & Rovner, Harrisburg, PA, for appellant.

Charles W. Johnston, Jr., (argued), Handler, Gerber, Johnston & Aronson, Camp Hill, PA, for appellees.

Before: GREENBERG, COWEN, and ROSENN, Circuit Judges.

**OPINION OF THE COURT**

ROSENN, Circuit Judge.

Pennsylvania enacted the Motor Vehicle Financial Responsibility Law (the Act), of which § 1722 precludes a person from recovering damages arising out of the use of a motor vehicle from a culpable tortfeasor if the claimant is otherwise eligible to receive those benefits from any program, group contract, or other arrangement, as defined by the Act. 75 Pa. Cons.Stat.Ann. § 1722 (Supp.1993). The primary issue raised on this appeal is whether the Act is preempted by the Employee Retirement Income Security Act of 1974, (ERISA), 29 U.S.C. § 1001 *et seq.* The district court, on cross-motions for summary judgment, answering in the affirmative, entered judgment in favor of the defendants, 818 F.Supp. 761. We affirm.[1]

I.

Appellees, the Northeast Department, ILGWU Health and Welfare Fund and its successor in interest, the ILGWU Eastern States Health and Welfare Fund (the Fund), operate a multi-state, multi-employer health and welfare plan within the meaning of ERISA, 29 U.S.C. § 1002(1).[2] The Fund, which is self-insured, is governed by a basic plan and rules of the Northeast Department, ILGWU. In addition, the Fund is also operated and maintained pursuant to rules set forth in a written document, the Summary Plan Description (collectively, the Plan). The Plan provides medical, disability, and preventative health care benefits to employees of contributing union employers and the Fund remains solely responsible for the payment of such benefits. The Plan further provides various exclusions with respect to benefits it offers. Exclusion 5 sets forth that members of the program "can not receive benefits/coverage for a condition if the costs of treating that condition are recoverable through legal action or claim settlement from another party or insurance company."

Appellant, Dorothy E. Travitz, an employee of BR Apparel, Inc., a member of the International Ladies' Garment Workers' Union (ILGWU), and a participant in the union's health and welfare program, sustained serious injuries in a motor vehicle accident on October 18, 1990. As a result, she incurred medical bills exceeding $65,000. She received $10,000 in first party medical benefits under her motor vehicle insurance policy. After exhausting those benefits, she submitted for payment numerous claims relating to treatment and services for her injuries to the providers of the union's benefit program, the Fund. The Fund, pursuant to its Advance of Benefits Provision,[3] paid a total of $2,924.78 of medical benefits to Travitz. In accordance with this provision, the Fund also sought assurances from Travitz that she would eventually repay the amounts received as advances and requested that she sign an assignment of claim form. Travitz refused to provide those assurances and did not execute the form. The Fund, therefore, ceased advancing benefits to Travitz.

Travitz also filed a claim against the tortfeasor alleging negligence in the operation of a motor vehicle. Eventually, the claim was settled. The agreement provided that in exchange for a release from liability, Travitz would receive $125,000 in immediate cash,

---

1. The district court exercised subject matter jurisdiction pursuant to 29 U.S.C. § 1001 *et seq.* as the action constituted a suit under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due under a covered plan, and pursuant to 28 U.S.C. § 1331(a) as the counterclaim arose under federal common law. We have jurisdiction under 28 U.S.C. § 1291.

2. Effective January 1, 1990, the Northeast Department ILGWU Health and Welfare Fund merged into the ILGWU Eastern States Health and Welfare Fund, which is the surviving plan of the merger. The Fund is now known as the ILGWU Eastern States Health and Welfare Fund.

3. The provision provides, in pertinent part:

   If you have a right to recover payment for an injury or illness from another source, there may be delays because of the time it takes to process the claim or because of lawsuits. If this happens, the Fund may be able to help you temporarily by paying benefits in advance. If this is done you must sign a legal document stating that the Fund will be repaid in full, from any settlement you receive. The Fund must be repaid to the Full Extent ... of the benefits it provided.... (Emphasis in original).

four guaranteed scheduled payments ranging from $10,000 to $30,000, plus $1,030 per month for life with fifteen years guaranteed.

Subsequently, Travitz initiated suit against the Fund in the United States District Court for the Middle District of Pennsylvania seeking payment by the Fund of the outstanding medical benefits claimed to be due her, costs, and bad faith damages. In her complaint, she alleged that the Fund improperly relied upon coverage Exclusion 5 to deny her these medical benefits in the face of the Act's provision that precluded the recovery of medical expenses from a tortfeasor when they were payable under the medical benefit program she had with the Fund.[4]

In effect, she claimed that the medical benefits were recoverable only from the Fund regardless of the coverage exclusion of the Plan because the Act precluded her from recovering them from the tortfeasor. Section 1722 provides:

> In any action for damages against a tortfeasor ... arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in ... any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under ... any program, group contract or other arrangement for payment of benefits as defined in section 1719.

75 Pa. Cons.Stat.Ann. § 1722 (Supp.1993). The Fund argued, however, that Exclusion 5 of their Plan is applicable and therefore its medical benefits were unavailable to Travitz. Accordingly, the Fund contended that her only recourse was to pursue the tortfeasor. In addition, the Fund counterclaimed for reimbursement of payments totaling $2,924.78 advanced to Travitz.

Chief Judge Rambo of the district court, on cross-motions for summary judgment, held that the Fund is a multi-employer health and welfare plan within the meaning of ERISA, and that § 1722 of the Pennsylvania Act is preempted by the self-insured ERISA benefit plan. Consistent with her opinion, the court found for the Fund on its counterclaim and ordered that Travitz reimburse it the $2,924.78 advanced along with prejudgment interest. Travitz appealed.

## II.

■ The issue of preemption is essentially legal and our review of the district court's summary judgment holding is therefore plenary. *See Wheeler v. Towanda Area School Dist.,* 950 F.2d 128, 129 (3d Cir.1991). On appeal we apply the same test the district court should have used in the first instance. *See Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). We therefore affirm only if there are no genuine issues of material fact and the relevant law entitles the moving party to judgment.

Travitz's arguments on appeal are legal in nature. She basically argues two principal points which seem to be intertwined. First, although section 1722 "relates to" employee welfare plans, it lacks a "connection with" such plans and falls within the "remote and peripheral" exception to ERISA preemption. Second, that the supposed conflict between Section 1722 and Exclusion 5 of the Plan is essentially an issue of interpretation rather than one of preemption, and should be interpreted in a manner consistent with the Fund's requirements. In effect, she claims that Exclusion 5 cannot be used to deny her medical benefits from the Fund because her recovery from the tortfeasor did not encompass those benefits; rather they were limited to pain and suffering only. Therefore, she argues, the Fund must reimburse her for those presently unrecovered expenses.

We turn first to three ERISA statutory provisions dealing with the question of preemption. These provisions in Section 1144 of ERISA state in relevant part:

---

**4.** Travitz characterizes the settlement she received from the tortfeasor as one for pain and suffering. The Fund does not provide benefits for pain and suffering and thus, in accordance with her interpretation, Section 1722 did not preclude the recovery of those benefits from the tortfeasor.

Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .

29 U.S.C. § 1144(a) (1988) (preemption clause)

Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

*Id.* § 1144(b)(2)(A) (saving clause)

Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contract, banks, trust companies, or investment companies.

*Id.* § 1144(b)(2)(B) (deemer clause)

■ As the Supreme Court has explained, the broadly worded preemption clause "establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). The saving clause expressly reserves to the states the power to regulate insurance; the deemer clause, however, precludes a state from regulating an employee benefit plan governed by ERISA in the guise of regulating insurance companies. *See id.*

■ Our first inquiry, under these provisions, is whether Section 1722 "relate[s] to" an employee benefit plan. A law relates to an employee welfare plan if it has "a connection with or reference to such a plan." *Shaw v. Delta Air Lines Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Section 1722, which precludes the recovery of benefits from a tortfeasor where a person is eligible to receive those benefits under another program, group contract or arrangement, as defined in Section 1719, has "reference" to benefit plans governed by ERISA. *See FMC,* 498 U.S. at 59, 111 S.Ct. at 408. Section 1719(b) of the Act states that "the term 'program, group contract or other arrangement' includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation." 75 Pa. Cons.Stat.Ann. § 1719(b) (Supp.1993).

■ In addition, Section 1722 has a "connection" to ERISA benefit plans. The Court has held that state laws have a "connection" to an ERISA plan when the laws risk subjecting plan administrators to conflicting state regulations. *See FMC,* 498 U.S. at 59, 111 S.Ct. at 408. Section 1722 has that very effect. In states with a provision like Section 1722, the Fund, rather than a tortfeasor, would be primarily liable. Therefore, in structuring its program, a health and welfare benefit plan would have to consider its ultimate liability and adjust the level of benefits accordingly. Thus, plan administrators would be unable "to calculate uniform benefit levels nationwide." *Id.* at 60, 111 S.Ct. at 409. To ensure that ERISA would be governed by a "uniform administrative scheme, which [would] provide[ ] a set of standard procedures to guide processing of claims and disbursement of benefits," Congress preempted state laws "connected" to ERISA. *Id.* (quoting *Fort Halifax Packing Co. Inc. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987)).

■ Travitz's contention that Section 1722's effect on ERISA plans is "too tenuous, remote, or peripheral . . . to warrant a finding that the law 'relates to' the plan," *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21, is unavailing. Several factors have been examined in analyzing whether a state law falls within the "remote and peripheral" exception to § 1144. Those factors include: (1) whether the state law represents a traditional exercise of state authority; (2) whether the state law affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—rather than relations between one of these entities and an outside party, or between two outside parties with only an incidental effect

on the plan; and (3) whether the effect of the state law upon the ERISA plan is direct or merely incidental. *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550, 555–56 (6th Cir.1987).

Application of the foregoing factors compels the conclusion that Section 1722 is preempted by ERISA. Although, in specifying the damages that may be recovered from a tortfeasor, Section 1722 arguably represents a traditional exercise of state power, the remaining factors referred to above clearly tilt the balance against Travitz. Section 1722, by shifting ultimate liability for medical and health care benefits to the ERISA Fund, has a direct and possibly devastating effect on it. That effect implicates the relations between the principal parties— the Fund and its beneficiaries—by requiring the Fund to pay Travitz's medical benefits and by making less overall benefits available to the other beneficiaries of the Fund. Thus, the exception set forth in *Shaw* is not applicable and, unless saved by another ERISA provision, Section 1722 will be preempted.

■ Arguably, Section 1722 falls within the purview of the saving clause which specifically reserves the regulation of insurance to the states. Although, on its face, the statute does not seem to be regulating insurance, it is part of a broad-based law which not only has an impact on insurance companies but is also specifically directed towards that industry. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987). The deemer clause, however, would proscribe a state from regulating self-insured ERISA plans. The clause provides that states are forbidden to deem ERISA plans "to be an insurance company or other insurer." 29 U.S.C. § 1144(b)(2)(B). Therefore, even if a state law is saved because it regulates insurance it has no effect on self-insured ERISA plans by virtue of the deemer clause. *See FMC,* 498 U.S. at 61, 111 S.Ct. at 409.

■ Thus, we hold that Section 1722 of the Pennsylvania Motor Vehicle Financial Responsibility Law or any state statute that attempts to shift liability for medical and health care benefits to a plan, group contract, or other arrangement operating within the meaning of ERISA is preempted by it.[5]

■ Travitz persists in arguing, however, that notwithstanding its preemption, Section 1722 should still be interpreted to apply because it can be read as consistent with the exclusions in the Fund's Plan. Travitz is mistaken. The Court has held that preemption is not precluded "simply because a state law is consistent with ERISA's substantive requirements." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (citing *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985)). Moreover, Section 1722 and Exclusion 5 of the Fund's Plan are in no way consistent. Each attempts to shift the responsibility for the payment of benefits from itself to another source.

■ It is ironic that in her attempt to construe the provisions as consistent with each other, Travitz is endeavoring to circumvent the purpose of both provisions. By arguing that she could not have received medical benefits from her settlement with the tortfeasor because of Section 1722's restriction, she is seeking to recover twice for the same injury. Her classification of the settlement as one for pain and suffering rather than for medical benefits is disingenuous, in the face of the language of the settlement agreement she executed which provides a discharge for "all claims," including those for "personal injuries." Travitz's characterization of the settlement award underscores the need to have but one authority dealing with benefits. Provisions enacted pursuant to ERISA would thus govern and Section 1722 of the Pennsylvania Act must therefore be

---

5. Although *United Wire, Etc. v. Morristown Memorial Hospital,* 995 F.2d 1179 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 382, 126 L.Ed.2d 332 (1993), not cited by any of the parties, reached a contrary result in construing a New Jersey statute pertaining to hospital rates, the case is inapposite on its facts. Unlike the case

*sub judice,* the state law in *United Wire* did "not have either the effect of dictating or restricting the manner in which ERISA plans structure or conduct their affairs or the effect of impairing their ability to operate simultaneously in more than one state." *Id.*

preempted with respect to the Fund's self-insured ERISA plan. Accordingly, as Section 1722 is preempted it cannot and could not have prevented Travitz from recovering medical benefits from the tortfeasor. Consequently, under the plain terms of Exclusion 5 which is controlling, the Fund is not responsible for the medical benefits because they were recoverable from the tortfeasor.

In her statement of the issues presented for review, Travitz also asserts that the district court erred in granting summary judgment in favor of the Fund with respect to its counterclaim for the $2,924.78 advanced to her, along with prejudgment interest. Under Fed.R.App.P. 28(a)(5), an appellant is required to list the issues raised on appeal and present an argument in support of them. *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1065 (3d Cir.1991) ("absent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations."), *cert. denied,* — U.S. ——, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992). When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal. *Nagle v. Alspach,* 8 F.3d 141 (3d Cir.1993); *Kost v. Kozakiewicz,* 1 F.3d 176, 182 (3d Cir.1993); *Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.,* 931 F.2d 1002, 1011 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); 16 Charles A. Wright, et al., *Federal Practice and Procedure* § 3974, at 421 (1977 & Supp.1993, at 690) (issue must be raised in both the issues and argument sections of the brief).

In the present case, Travitz completely fails to articulate or pursue these issues. Neither does she attempt to argue extraordinary circumstances which might excuse her failure to argue them. We therefore conclude that Travitz has abandoned and waived these issues and we refuse to address them.

Accordingly, the judgment of the district court will be affirmed. Costs taxed to the appellant.