**Joseph and Mary AUSTIN, Plaintiffs,**

v.

**Charles DIONNE, Defendant.**

**Civ. A. No. 95–359.**

United States District Court,
E.D. Pennsylvania.

Dec. 7, 1995.

Benjamin Kuby, Klovsky, Kuby & Harris, Philadelphia, PA, for Plaintiffs.

Kevin R. Mc Nulty, German, Gallagher & Murtagh, Philadelphia, PA, Vaughn A. Booker, Philadelphia, PA, Timothy E. Games, German, Gallagher & Murtagh, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Joseph Austin ("Austin") is a New Jersey resident employed by Philadelphia Newspapers, Inc., ("PNI") in Pennsylvania. He was injured in an automobile accident in Pennsylvania while on personal business. As a result of the accident, Austin sought lost wages through his automobile insurance policy and through supplemental payments for wage benefits under his PNI disability insurance policy.

Defendant Charles Dionne ("Dionne") has filed a motion in limine seeking to preclude plaintiffs from introducing at trial evidence of

lost wages which have been paid or are payable to Austin under his automobile and disability insurance policies. Dionne argues that collecting benefits from a tortfeasor as well as from Austin's insurance policies constitutes double recovery, a practice barred under Pennsylvania law.

On the other hand, plaintiffs contend that New Jersey law applies in this case, and that, under New Jersey law, double recovery is permitted in cases involving automobile accidents. Furthermore, plaintiffs argue that, even if Pennsylvania rather than New Jersey law applies, ERISA preempts Pennsylvania law because Austin's benefits have been paid pursuant to a self-funded disability insurance policy provided by PNI under a collective bargaining agreement. Finally, plaintiffs contend that, under ERISA, unlike Pennsylvania law, Austin is entitled to collect from more than one source.

The Court finds that, under Pennsylvania's choice of law rules, Pennsylvania law applies to the interpretation of first party payments under plaintiffs' PIP automobile insurance policy, as well as the employer's disability insurance policy. In addition, the Court concludes that ERISA does not preempt the Pennsylvania law barring double recovery. Under the facts of this case, Pennsylvania law neither interferes with nor regulates a claim by or against the PNI disability insurance policy operating under ERISA.

## I

The following facts are undisputed. Plaintiffs Joseph and Mary Austin are New Jersey residents. Austin is employed as a pressman at the Philadelphia Inquirer. At the time of the accident, Dionne was a resident of Pennsylvania.

On February 10, 1993, at approximately 4:45 p.m., Austin was proceeding south on Interstate Route 95 in Philadelphia, Pennsylvania, in his pick-up truck. At the same time, Dionne was travelling south on Interstate Route 95 in his own vehicle. Dionne's car collided with the back of Austin's truck, causing Austin to suffer soft tissue injuries to his neck and back.

Following the accident, Austin missed approximately 52 weeks of work. He sought lost wages in the amount of $5,200 under his automobile personal injury protection ("PIP") coverage with Prudential Insurance Company, which have not been paid to date, but which plaintiffs contend are payable. In addition, Austin received $520.57 per week from February 10, 1993, to January 9, 1994, from his PNI disability insurance. This coverage is provided under the collective bargaining agreement between Philadelphia Newspapers Union Local 16 and the Philadelphia Inquirer.

## II

### (A)

Plaintiffs contend that New Jersey law applies to this case. Defendant disagrees, arguing instead that the law to be applied is that of Pennsylvania. Because the case involves contacts which impact more than one jurisdiction, the Court must choose between the relevant laws of the two jurisdictions. *See* Robert A. Leflar, *American Conflicts Law* § 2, at 3 (3d ed. 1977).

In a diversity action, "the choice of law rules of the forum state [determine] which state's law will be applied." *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988) (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). Accordingly, the Court will apply Pennsylvania's choice of law rules.

In *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court abandoned the traditional *lex loci delicti* conflicts rule for "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Id.* 203 A.2d at 805. In commenting on the development of the rule set forth in *Griffith,* the Third Circuit stated,

[T]his new conflicts methodology has evolved into a hybrid approach that "combines the approaches of both Restatement II (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)."

*Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.1991) (quoting *Melville v. Am. Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir.1978)).

Under Pennsylvania choice of law rules and the method of analysis established in *Griffith*, three outcomes may obtain. First, if the law of either jurisdiction may be applied without impairing the governmental interests of the jurisdiction whose law is not being applied, no conflict exists between the respective laws of each jurisdiction and the court should apply the law of the forum. *See* Eugene F. Scoles and Peter Hay, *Conflict of Laws* § 2.6, at 17 & n. 8 (2d ed. 1992).

Second, if only one of the two jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law, a "false conflict" arises. *Lacey*, 932 F.2d at 187. "Although two jurisdictions have nominal contacts with the transaction, only one jurisdiction is truly concerned with the result." *Kuchinic v. McCrory*, 422 Pa. 620, 624 n. 4, 222 A.2d 897, 900 n. 4 (1966). In other words, if neither jurisdiction's governmental interests would be harmed when applying the law of the one jurisdiction, whose interests would be impaired if its law were not applied, the conflict is "false." [1]

Third, a "true conflict" arises only if, no matter which jurisdiction's law is applied, the governmental interests of the jurisdiction whose law is not applied would be impaired. *Lacey*, 932 F.2d at 187 n. 15. "If a true conflict exists, the court must determine which state has the greater interest in the application of its law." *Id.*

The Court shall now apply the Pennsylvania conflict of law analysis to both the automobile and disability insurance policies in question.

(1)

Both parties agree that the amount payable to plaintiffs under PIP lost wages benefits in an action against the tortfeasor is excludable under both New Jersey and Pennsylvania law. *See* Plaintiffs' Pre–Trial Memorandum, doc. no. 20, at 5; Defendant's Memorandum in Support of His Motion in Limine, doc. no. 19, at 3. Because the law of either jurisdiction may be applied without injuring the governmental interests of the other, there is no conflict. *See* 75 Pa.Cons.Stat.Ann. § 1722 (1995); 39 N.J.Stat.Ann. § 6A–12 (West 1994).[2] Therefore, the Court must apply the law of Pennsylvania, the forum state.

(2)

The Court now turns to whether a conflict exists between New Jersey law and Pennsylvania law regarding the exclusion of wage losses recovered under the PNI disability insurance policy.

Under New Jersey law, in an action by an injured plaintiff against a tortfeasor, collateral source benefits are excluded from damages that may be submitted to a jury. 2A

---

1. The concept of "false conflict" is derived from the scholarship of Professor Brainerd Currie. *See* Brainerd Currie, *Selected Essays on the Conflict of Laws* 189 (1963). Professor Currie defined a false conflict in the following manner: "[w]hen one of two states related to a case has a legitimate interest in the application of its law and policy and the other state has none, there is no real problem; clearly the law of the interested state should be applied." *Id.*

2. Pennsylvania Motor Vehicle Financial Responsibility Law § 1722 provides,

> In any action for damages ... arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in

section 1719 ... shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

75 Pa.Cons.Stat.Ann. § 1722 (1995).

New Jersey Motor Vehicles and Traffic Regulations, subtitle 2A, § 6A–12 provides in pertinent part,

> [E]vidence of the amounts collectible or paid ... to an injured person, including the amounts of any deductibles, copayments or exclusions ... otherwise compensated is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.

39 N.J.Stat.Ann. § 6A–12 (West 1994).

N.J.Stat.Ann. § 15–97 (West 1994).[3] Yet, all actions brought pursuant to the provisions of Title 39 (actions relating to motor vehicles and traffic regulations) are exempt from this general exclusion of collateral source benefits. *Id.* The effect of exempting motor vehicle accidents from the general prohibition against double recovery is, as the New Jersey Superior Court has recognized, to make available to a plaintiff in an automobile accident "additional benefits" from an employer's voluntary supplemental insurance plan. *O'Boyle v. Prudential Ins. Co. of Am.*, 241 N.J.Super. 503, 509, 575 A.2d 515, 518 (1990) (declining to "inject some lurking judicial suspicion that a better policy [against double recovery] could or should be engrafted on the statutory scheme"). Thus, under New Jersey law, despite the fact that double recovery is prohibited in all other contexts, in an action against a tortfeasor relating to an automobile accident, the amounts recoverable under an employer's disability insurance policy are not excluded from wage loss calculations.

By contrast, Pennsylvania law prohibits double recovery without exception. Under § 1722 of the Pennsylvania Motor Vehicle Financial Responsibility Law, "in any action for damages against a tortfeasor," a party is precluded from "recovering the amount of benefits paid or payable under ... any program, group contract or other arrangement for payment of benefits." 75 Pa.Cons.Stat. Ann. § 1722 (1995). As the Third Circuit has recognized, § 1722 reflects the Pennsylvania legislature's goal of preventing double recovery from both an employer's disability insurance fund and a tortfeasor. *See Travitz v. Northeast Dep't ILGWU Health and Welfare Fund*, 13 F.3d 704, 710 (3d Cir.1994) (finding that plaintiff attempted to circumvent purpose of both § 1722 and disability insurance contract's exclusion clause). Therefore, application of Pennsylvania law in the present case would result in excluding from plaintiffs' wage loss calculations the amounts already recovered from Austin's PNI disability insurance policy.

In short, if New Jersey's laws were applied, Pennsylvania's interest against double recovery would be impaired. The converse is equally true. If Pennsylvania law were applied, New Jersey's interest in preserving double recovery in automobile accident cases from non-automobile insurance policies would be impaired. The Court finds that this conflict is a "true" one, since the governmental interests of one jurisdiction would be impaired if the other state's law were applied, and vice-versa.[4] *Lacey*, 932 F.2d at 187 n.

---

**3.** Section 2A:15–97 provides in pertinent part,

> In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972, c. 70 (C. 39:6A–1 *et seq.*), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff....

2A N.J.Stat.Ann. § 15–97 (West 1994).

**4.** An argument could be made that, in reality, the Court is confronted with a "false conflict," since both New Jersey and Pennsylvania policies appear aligned against double recovery. Even if the Court were to find the existence of a false conflict, however, its ultimate conclusion would remain the same.

In *Kiss v. Jacob*, 138 N.J. 278, 650 A.2d 336 (1994), the New Jersey Supreme Court found that "[t]he Legislature's purpose in enacting N.J.S.A. 2A:15–97 was to do away with the common-law collateral-source rule [which] permits a tort victim to retain collateral benefits ... in addition to any amount that the victim might recover from that defendant." *Id.* 650 A.2d at 337. Despite the New Jersey Supreme Court's articulation of a strong state policy against double recovery, the fact remains that the state legislature left a gap in its laws, by explicitly exempting Title 39 actions from the scope of Title 2A:15–97. Double recovery remains available from non-automobile insurance policies in the context of motor vehicle accidents, notwithstanding New Jersey's efforts "to effect cost containment" in "insurance-type benefits." *Id.* at 338; *see also O'Boyle*, 241 N.J.Super. at 509, 575 A.2d at 518 (declining to "engraft" a "better policy" against double recovery onto the statutory scheme).

Yet, precisely because of the New Jersey legislature's general policy against double recovery, a party could argue that "only [Pennsylvania's] governmental interests would be impaired by the application of [New Jersey's] law" which permits double recovery. *Lacey*, 932 F.2d at 187. Pennsylvania's strong policy against double recovery has already been expressed through § 1722.

15. The Court must now decide whether New Jersey or Pennsylvania law applies to this case.

### (B)

■ Under the *Griffith* method of analysis, a court must examine both the contacts establishing significant relationships, as set forth in Restatement (Second), and the governmental interests and policies of the states pertinent to the controversy. *Lacey,* 932 F.2d at 187; *Griffith,* 203 A.2d at 805. Section 145 of the Restatement (Second) of Conflicts of Law directs a court to consider the following contacts in order to determine the applicable law:

a) the place where the injury occurred,

b) the place where the conduct causing the injury occurred,

c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflicts of Law § 145(2) (1969). Austin's injuries and Dionne's conduct causing the injury both occurred on Interstate Route 95 in Pennsylvania. Dionne's residence is in Pennsylvania. While both plaintiffs reside in New Jersey, Austin is employed at Philadelphia Newspapers, Inc., under whose collective bargaining agreement he claims entitlement to disability payments.

In addition, as this Court has discussed in the previous section, Pennsylvania has an articulated policy against double recovery and a strong interest in containing the rising costs of automobile insurance for its residents. By contrast, New Jersey's permissive view of double recovery in automobile accident cases appears to be the result of a gap in the legislative scheme rather than an articulation of a strong policy favoring double recovery in all such cases. *See supra* note 4; *cf. Kiss v. Jacob,* 138 N.J. 278, 650 A.2d 336, 337–38 (1994) (finding intent "to prohibit duplicative recovery by plaintiffs" when New Jersey Legislature drafted 2A N.J.Stat.Ann. § 15–97). Clearly, application of New Jersey law would defeat Pennsylvania's policy against double recovery. Although the con-

verse is likewise true, the Court finds that the policy in New Jersey permitting double recovery has been less robustly expressed than in Pennsylvania.

Under the contacts prong of the *Griffith* analysis, the Court concludes that an overwhelming number of contacts are associated with Pennsylvania, not New Jersey. Moreover, after assessing "the policies and interests underlying the particular issue before the court," *Griffith,* 203 A.2d at 805, the Court finds that Pennsylvania "has the greater interest in the application of its law." *Lacey,* 932 F.2d at 187 n. 15. Therefore, the Court shall apply Pennsylvania law to plaintiffs' claims under the PNI disability insurance policy.

### (C)

■ The Court shall now consider whether ERISA preempts § 1722 under the facts of this case. Application of § 1722 would prevent the Austins from recovering damages from Dionne once they have recovered from the PNI policy. If, however, ERISA preemption operates to proscribe § 1722, the Austins would recovery doubly. The Court finds that ERISA preemption is not implicated here because the operation of § 1722 in this case neither shifts liability from Dionne to the ERISA-qualified PNI plan nor interferes with the administration of the plan.

### (1)

Plaintiffs contend that, even if Pennsylvania law were to apply, ERISA preempts the applicability of § 1722 to the PNI disability insurance policy. Under ERISA, an "employee welfare benefit plan" is defined as

any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C.A. § 1002(1) (Supp.1995). Furthermore, ERISA covers, with certain excep-

tions,[5] "any employee benefit plan if it is established or maintained (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both." 29 U.S.C.A. § 1003(a) (1985).

Three ERISA statutory provisions control the issue of preemption. First, the preemption clause prohibits state regulation of employee welfare benefit plans which qualify under the above provisions:

> Except as provided for in subsection (b) of this section [the ERISA savings clause], the provisions of this subchapter ... shall supercede any and all State laws insofar as they may not or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C.A. § 1144(a) (1985). Second, the savings clause expressly reserves the power of insurance regulation to the States: "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C.A. § 1144(b)(2)(A) (1985). Third, the deemer clause provides,

> Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C.A. § 1144(b)(2)(B) (1985). Acting in concert, the preemption, savings, and deemer clauses prevent state regulation of ERISA-qualified employee benefits plans, but reserve the regulation of insurance, banking, or securities to state laws. *See Travitz*, 13 F.3d at 709.

Defendant argues that the PNI plan is not "self-funded" and therefore falls in its entirety outside the scope of ERISA preemption. *See, e.g., Travitz v. Northeast Dep't ILGWU Health and Welfare Fund*, 818 F.Supp. 761, 764 (M.D.Pa.1993) (discussing whether defendant-benefits fund is self-insured and qualifies under ERISA), *aff'd* 13 F.3d 704 (3d Cir.1994). The parties have quarreled extensively over this issue. This battle of affidavits is of no import since, even if the Court were to find that the plan is self-funded, the Court has concluded that § 1722 is not preempted by ERISA in this case.

### (2)

Consideration of whether § 1722 is preempted by ERISA must begin with a review of the decisions of the United States Supreme Court in *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), and of the Third Circuit in *Travitz*, 13 F.3d 704.

In *FMC*, 498 U.S. at 54–55, 111 S.Ct. at 406, the defendant-employee recovered medical expenses both from an ERISA-qualified insurance plan and from the tortfeasor for injuries sustained by his daughter in an automobile accident. The plaintiff-employer sought reimbursement from the employee on behalf of the self-funded health care plan, maintaining that, under the insurance agreement, it was entitled to subrogation of the amounts which had already been disbursed to the employee by the tortfeasor.

The employee argued that, under then-effective § 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Cons.Stat.Ann. § 1720,[6] the employer was

---

**5.** Plaintiffs contend that the exceptions listed in § 1003(b) are not applicable to the PNI plan. *See* Plaintiffs' Memorandum Contra Motion in Limine Filed by Defendant Seeking to Preclude Proof of Loss of Wages Under Motor Vehicle Financial Responsibility Act, Section 1722, in Third Party Action, dated September 8, 1995, at (unnumbered) 4. Absent any allegations by the defendant to the contrary, the Court will deem the exceptions inapplicable here.

**6.** Section 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law, entitled "subrogation," provided

> In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to re-

prohibited from exercising its subrogation rights to the employee's claim. The Supreme Court held that ERISA preempted § 1720 prohibitions against subrogation by qualified self-funded employee benefits plans, because the "clear intent [of Congress was] *to exempt from direct state insurance regulation ERISA employee benefit plans.*" *Id.* at 65, 111 S.Ct. at 411 (emphasis added).

In *Travitz,* 13 F.3d at 704, the plaintiff-employee, who had been injured in an automobile accident, sought double recovery of medical expenses from her union benefits program and from the tortfeasor. Although the defendant-union's health care fund paid a portion of the plaintiff's medical expenses, the fund ceased advancing benefits to the plaintiff when she refused to reimburse the fund for expenses which she had already recovered from the tortfeasor.

The plaintiff-employee contended that the damages collected from the tortfeasor were for pain and suffering and thus were not duplicative of medical expense benefits receivable from the union fund. The employee argued that, under Pennsylvania Motor Vehicle Financial Responsibility Law § 1722, 75 Pa.Cons.Stat.Ann. § 1722, recovering damages for pain and suffering from one source and medical payments from another did not constitute double recovery.

Relying on the Supreme Court's teaching in *FMC* that ERISA was intended to exempt ERISA-qualified plans from direct state regulation, the Third Circuit concluded that "[s]ection 1722 of the Pennsylvania Motor Vehicle Financial Responsibility Law or any state statute that *attempts to shift liability for medical and health care benefits to a plan, group contract, or other arrangement operating within the meaning of ERISA* is

preempted by it." 13 F.3d at 710 (emphasis added). Therefore, because the effect of the state's prohibition against double recovery was to prevent the employee benefits plan from exercising its subrogation rights against plaintiff, ERISA preempted § 1722. *Id.*

Based on *FMC* and *Travitz,* plaintiffs argue that ERISA mandates preemption of § 1722 in all cases where at least one source of recovery is a qualified plan. The Court disagrees. The holdings in *FMC* and *Travitz,* in the Court's view, are much less broad than plaintiffs contend. Instead, the Court finds that preemption of § 1722 is implicated only when application of the prohibition against double recovery has the *effect* of regulating, and interfering with, claims by or against an employee benefits plan operating under ERISA.

Applying *FMC* and *Travitz* to this case, the Court finds that the § 1722 prohibition against double recovery does not pertain to amounts paid or payable to Joseph Austin under the PNI disability insurance policy.[7] Rather, the source of funds seeking § 1722 protection is the tortfeasor, Dionne. Plaintiffs are not attempting to shift liability to the PNI plan. Instead, the Austins seek double recovery by collecting the same benefits from Dionne that they have already collected from the plan.

In other words, application of § 1722 would not result in interference with the PNI disability insurance plan here; it would merely prevent collection of a windfall by Austin. The Court sees no reason why Pennsylvania's policy of prohibiting double recovery should not be given full effect, so long as doing so does not shift liability to the PNI fund operating under ERISA.[8]

quired benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits in lieu thereof paid or payable under section 1719 (relating to coordination of benefits).

75 Pa.Cons.Stat.Ann. § 1720 (effective October 1, 1984) (repealed August 31, 1993).

7. Neither party has argued that the PNI employee benefits plan is entitled to subrogation of the amounts paid by Dionne to Austin.

8. Alternatively, the Court notes that an exception to ERISA preemption may also be applicable

here since the effect of § 1722 on the PNI plan is "too tenuous, remote, or peripheral ... to warrant a finding that the law 'relates to' the plan." *Travitz,* 13 F.3d at 709 (citation omitted); *see also Keystone Chapter, Associated Builders and Contractors, Inc. v. Foley,* 37 F.3d 945, 954–55 (3d Cir.1994) (holding that, although Pennsylvania minimum wage law could not refer specifically to ERISA plans or accord them special treatment, law conferred broad authority exercisable in a manner consistent with ERISA). The § 1722 prohibition against double recovery affects only the relations between a plan beneficia-

## III

In the present case, Austin received wage loss payments in the amount of $520.57 per week under his employer's disability insurance policy from February 10, 1993, to January 9, 1994. Under Pennsylvania's choice of law rules, Pennsylvania law applies to the interpretation of first party payments under plaintiffs' PIP automobile insurance policy, as well as the employer's disability insurance policy. Moreover, ERISA does not preempt the Pennsylvania law barring double recovery. Accordingly, defendant's motion seeking to preclude at trial plaintiffs' evidence of any lost wages paid or payable by the PIP automobile insurance policy and by the PNI disability insurance policy shall be granted.

ry, Austin, and an outside party, Dionne, who is clearly not a "principal ERISA entity." *Travitz,* 13 F.3d at 710 (citation omitted). Moreover, the statute regulates tort recovery, an area of "tradi-tional exercise of state authority." *Id.* In short, no part of the federal scheme under ERISA is disturbed.