Vanessa M. **FISHER**, Appellant,

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY,** Appellee.

No. 98–CV–650.

District of Columbia Court of Appeals.

Submitted March 4, 1999.

Decided Nov. 16, 2000.

Nicholas S. Nunzio, Jr., was on the brief for appellant.

Burt M. Zurer, Kensington, MD, was on the brief for appellee.

Before TERRY and RUIZ, Associate Judges, and KERN, Senior Judge.

TERRY, Associate Judge:

Vanessa Fisher was injured in an automobile accident while insured by Government Employees Insurance Company ("GEICO") under an automobile insurance policy which included personal injury protection ("PIP") benefits. She sued GEICO for breach of contract, alleging that GEICO was liable to her under the policy for a particular medical expense associated with the accident even though her health insurance plan, an employee welfare benefit plan regulated under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (1994), had already paid the bill in full without requiring Ms. Fisher to pay either a co-payment or a deductible amount. Ms. Fisher maintains that D.C.Code § 35–2106(g) (1997), part of the District of Columbia no-fault insurance law, which prohibits an individual from claiming PIP benefits if he or she is eligible for compensation from another insurer, is pre-empted by section 514(a) of ERISA, 29 U.S.C. § 1144(a). We disagree and therefore affirm.

I

The facts of this case are simple and undisputed.[1] On August 10, 1995, Ms.

---

1. Both parties filed *motions for summary judgment,* and on appeal they rely on the facts as stated by the trial court.

Fisher was injured in an automobile accident. At that time GEICO insured Ms. Fisher under a District of Columbia automobile insurance policy with PIP benefits. At the same time, Ms. Fisher was also covered by a health and welfare plan ("Plan" or "ERISA Plan") established by her employer as an employee welfare benefit plan under ERISA.

For the injuries she received in the accident, Ms. Fisher sought treatment from various health care providers. Initially, all the medical expenses were paid by the Plan; Ms. Fisher herself was not required to pay a co-payment or deductible. She then applied to GEICO for District of Columbia PIP benefits, seeking reimbursement of medical expenses and lost wages. GEICO made payments for the lost wages and the majority of the medical expenses.[2] The only medical bill that GEICO did not pay, and the only one at issue here, is a bill for $2,120.00 from Dr. Harvey Mininberg ("the Mininberg bill").

Like all the other medical bills, the Mininberg bill was paid in full by Ms. Fisher's ERISA Plan, without a co-payment or deductible. Having made that payment, the Plan acquired a lien of $1,610.11,[3] which was satisfied by Ms. Fisher out of the proceeds of her recovery from a third-party tortfeasor. No medical bills are currently outstanding.

Ms. Fisher filed a civil complaint against GEICO, alleging that GEICO's failure to pay the Mininberg bill was a breach of its insurance contract and seeking reimbursement for the total amount of the bill, $2,120.00.[4] GEICO responded that D.C.Code § 35–2106(g) prohibited Ms. Fisher from being reimbursed for the Mininberg bill because her Plan had already paid it.[5] Ms. Fisher argued that section 35–2106(g) did not apply because it was pre-empted by section 514(a) of ERISA, 29 U.S.C. § 1144(a). The trial court held, however, that there was no pre-emption because the District of Columbia statute did not regulate ERISA plans in any way. It therefore granted GEICO's motion for summary judgment.

II

As a preliminary matter, GEICO maintains that this court should not entertain the instant appeal because Ms. Fisher does not have standing to bring a claim against it.[6] *See Speyer v. Barry,* 588 A.2d 1147, 1160 (D.C.1991). GEICO asserts that the question of pre-emption is really an issue of priority between insurance carriers and that the ERISA Plan, not Ms. Fisher, would have to bring this claim under a subrogation theory. Since the ERISA Plan is not a party to this proceeding, GEICO asserts that the case should be dismissed. It also argues that Ms. Fisher does not have standing because she is seeking double recovery, contrary to both ERISA and the District of Columbia no-fault law.

Before we reach the merits of a case, both "the 'constitutional' requirement

2. The record does not disclose who received the money that GEICO paid for the medical expenses, but for the purposes of this appeal we need not try to find out.

3. The record does not disclose why the Plan's lien was only $1,610.11 when the Mininberg bill was actually $2,120.00.

4. Ms. Fisher does not explain why she believes she is entitled to the total amount of the bill when she paid only a portion of it, $1,610.11, from the funds she received from the third-party tortfeasor.

5. Section 35–2106(g) provides:

*Prohibitions.*—A victim is prohibited from claiming personal injury protection benefits under this chapter, other than to compensate for any deductible, if the victim is eligible for compensation for the loss covered by personal injury protection from another insurer or another insurance coverage, unless the victim has exhausted benefits offered by the insurer or insurance coverage.

6. Although GEICO raised the issue of standing at the trial level, the court did not address it.

of a 'case or controversy' and the 'prudential' prerequisites of standing" must be satisfied. *Speyer*, 588 A.2d at 1160 (citation omitted). In order to meet the minimum requirements of a "case or controversy," a plaintiff must show (1) "that [she] has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," (2) "that the injury fairly can be traced to the challenged action," and (3) "that [the injury] is likely to be redressed by a favorable decision." *Community Credit Union Services, Inc. v. Federal Express Services Corp.*, 534 A.2d 331, 333 (D.C.1987) (citations and internal quotation marks omitted); *accord, Speyer*, 588 A.2d at 1160.[7] "[U]nder prudential principles of standing, a plaintiff may assert only its own legal rights ... and may assert only interests that fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Community Credit Union*, 534 A.2d at 333.

As GEICO points out, the Plan is conspicuously absent from this lawsuit. While some courts have held that an ERISA plan need not be a party to a suit in order to protect the rights afforded by ERISA, the person bringing the suit must usually be asserting the rights of the ERISA plan in order to have standing. *See Danowski v. United States*, 924 F.Supp. 661, 672 (D.N.J.1996). Unfortunately, in this case neither the employer's health plan nor the GEICO insurance policy is part of the record. Without them, we are unable to ascertain the subrogation rights of the ERISA Plan; hence we cannot determine whether the Plan has a right to reimburse-

ment from GEICO and whether Ms. Fisher can assert that right. Because Ms. Fisher, as the appellant, bears the responsibility of presenting a record on appeal sufficient to support her claims of error, *see Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982), she must suffer the consequences of any deficiencies in the record. We therefore conclude, in the absence of a contrary showing, that Ms. Fisher does not have standing to assert the ERISA Plan's possible right of subrogation.

Whether Ms. Fisher herself has standing as an individual is a closer question, but in the circumstances presented here, we need not decide it. Ms. Fisher claims that she has suffered an actual economic injury as a result of GEICO's alleged breach of contract because she was compelled to satisfy the Plan's lien with part of the proceeds from her tort recovery. Although it is undisputed that the Plan's lien was satisfied in that way, there is some question whether those proceeds ever really belonged to Ms. Fisher. There are also a few other unanswered questions lurking in the record—for example, why is there a $510 discrepancy between the Plan's lien and the Mininberg bill? Assuming that some of the proceeds Ms. Fisher recovered from the third-party tortfeasor were for medical expenses incurred as a result of the accident,[8] then that money arguably belongs to the Plan, at least to the extent that the Plan originally paid those expenses. On the other hand, even though Ms. Fisher did not pay the Mininberg bill, she is not necessarily barred from recover-

---

**7.** Although this court, as an Article I court, is not bound by "case or controversy" requirements based on Article III of the Constitution, we are limited by our own governing statute to deciding "cases and controversies." D.C.Code § 16–705(b) (1995). Accordingly, we look to federal case law to help us identify the cases and controversies that we may properly consider. *See Speyer*, 588 A.2d at 1160; *Community Credit Union*, 534 A.2d at 333.

**8.** The lien almost certainly must have been for the Plan's coverage of Ms. Fisher's medical

expenses; indeed, she does not argue that the money with which she satisfied the lien was for anything other than medical expenses. *Compare Travitz v. Northeast Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704, 708 n. 4 (3d Cir.) (injured party characterized funds received from a tortfeasor as payment for pain and suffering), *cert. denied*, 511 U.S. 1143, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994); *Western & Southern Life Insurance Co. v. Wall*, 903 F.Supp. 1155, 1159 (E.D.Mich.1995) (same).

ing the amount of that bill from GEICO. Putting aside for the moment any question of unjust enrichment, "[t]he law contains no rigid rule against overcompensation." *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 219, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). Indeed, Ms. Fisher may arguably be prohibited from recovering damages from GEICO only if D.C.Code § 35–2106(g) applies. *See Austin v. Dionne,* 909 F.Supp. 271, 276 (E.D.Pa.1995) (if ERISA pre-empts the Pennsylvania anti-double recovery statute, then the plaintiffs can recover doubly). Since we are being asked to determine whether section 35–2106(g) applies, the issue of Ms. Fisher's standing is at least partially dependent on the merits of her claim. We therefore turn to the merits.[9]

### III

■ Ms. Fisher maintains that section 35–2106(g) is pre-empted by ERISA, and thus that the trial court erred when it granted GEICO's motion for summary judgment and denied her cross-motion for summary judgment. Under Super. Ct. Civ. R. 56(c), summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See, e.g., Colbert v. Georgetown University,* 641 A.2d 469, 472 (D.C.1994) (en banc). We review *de novo* the grant or denial of a motion for summary judgment. *See Kendrick v. Fox Television,* 659 A.2d 814, 818 (D.C.1995). Since there is no dispute as to

the relevant facts in this case, we need only determine whether the trial court properly applied the substantive law. *Northbrook Insurance Co. v. United Services Automobile Ass'n,* 626 A.2d 915, 917 (D.C.1993).

Section 514 (a) of ERISA, 29 U.S.C. § 1144(a), provides that state laws which "relate to" employee benefit plans are pre-empted.[10] Although "the exercise of federal supremacy is not lightly to be presumed," *Greater Washington Board of Trade v. District of Columbia,* 292 U.S.App.D.C. 209, 212, 948 F.2d 1317, 1320 (1991) (citation omitted), *aff'd,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), the Supreme Court has interpreted ERISA's pre-emption clause expansively,[11] holding that a state law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *accord, e.g., New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *District of Columbia v. Greater Washington Board of Trade,* 506 U.S. 125, 129, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992); *FMC Corp., supra* note 10, 498 U.S. at 58, 111 S.Ct. 403. "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect," and even if the "state law is

---

9. Since we decide in part III that D.C.Code § 35–2106(g) is not pre-empted by ERISA, and therefore that Ms. Fisher's claim is barred by the statutory ban on double recovery, we need not consider whether, if the statute were pre-empted by ERISA, some other rule of law would nonetheless prevent her from recovering damages against GEICO in the circumstances of this case.

10. 29 U.S.C. § 1144(a) provides in pertinent part:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as

they may now or hereafter relate to any employee benefit plan. . . .

Two other parts of ERISA, section 514(b)(2)(A) and (b)(2)(B), 29 U.S.C. § 1144(b)(2)(A) and (b)(2)(B), bear on the application of the pre-emption clause. *See FMC Corp. v. Holliday,* 498 U.S. 52, 57–58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 44–45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). This case, however, involves only section 514(a).

11. "The pre-emption clause is conspicuous for its breadth." *FMC Corp., supra* note 10, 498 U.S. at 58, 111 S.Ct. 403.

consistent with ERISA's substantive requirements." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (citations omitted). But despite the Court's broad interpretation, ERISA's pre-emptive reach is not absolute. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. 2890.

D.C.Code § 35–2106(g) does not specifically refer to ERISA or to plans governed by ERISA, thus distinguishing it from the workers' compensation statute at issue in *Greater Washington Board of Trade. See New York State Conference,* 514 U.S. at 656, 115 S.Ct. 1671. Nevertheless, one might consider section 35–2106(g) to have a "connection with" or an indirect "reference to" an ERISA plan, since a person's eligibility for compensation under an ERISA plan could preclude that person from bringing a claim for PIP benefits. *See Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 831, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (the pre-emptive force of section 514(a) is not limited to state laws that single out or specifically mention ERISA plans). In fact, that is precisely what GEICO is asserting: that since Ms. Fisher was compensated by her ERISA Plan, she is barred from any additional recovery of PIP benefits by section 35–2106(g). Nevertheless, that "connection" alone will not bring the statute within the purview of ERISA's pre-emption clause if the statute, which essentially bars double recovery, is "too tenuous[ly], remote[ly], or peripheral[ly]" related to ERISA plans to warrant pre-emption. *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. 2890.

The federal courts have established various tests to determine when a state statute's relation to an ERISA plan is too tenuous or remote to justify pre-emption.

*See National · Rehabilitation Hospital v. Manpower Int'l, Inc.,* 3 F.Supp.2d 1457 (D.D.C.1998) (describing the two-factor test used by the Fifth Circuit and the seven-factor test used by the Eighth Circuit). In *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550 (6th Cir.1987), the court listed the three factors which are most often considered in determining whether a state law falls within the "remote and peripheral" exception to section 514(a) of ERISA. As later summarized by the Third Circuit, those factors include:

> (1) whether the state law represents a traditional exercise of state authority; (2) whether the state law affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—rather than relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan; and (3) whether the effect of the state law upon the ERISA plan is direct or merely incidental.

*Travitz, supra* note 8, 13 F.3d at 709–710 (citing *Firestone,* 810 F.2d at 555–556).

Applying these factors, we conclude that D.C.Code § 35–2106(g) falls within the "tenuous, remote and peripheral" exception to ERISA pre-emption.[12] Statutes governing double recovery and primacy of insurance payments are traditional exercises of state authority. *See Travitz,* 13 F.3d at 710 (statute specifying damages that may be recovered from a tortfeasor "arguably represents a traditional exercise of state power"). More importantly—indeed, crucially—section 35–2106(g) does not affect the relationship between the Plan and its beneficiary, Ms. Fisher. Rather, it governs the relationship between Ms. Fisher and GEICO, prohibiting her from recovering from GEICO once she has already recovered from the Plan. The statute becomes relevant only after the

---

**12.** The factors considered by the Fifth and Eighth Circuits are similar to those listed in *Travitz* (Third Circuit) and *Firestone* (Sixth Circuit), differing only in some details. Section 35–2106(g) is not pre-empted under any of these tests.

relationship between the ERISA Plan and its beneficiary has been determined. Furthermore, its effect on the Plan is only incidental, since the statute does not require the Plan to pay more or to be the primary source of coverage. It merely provides that PIP benefits will not be available under an insurance policy if such damages are covered by some other insurer. If the Plan did not cover the Mininberg bill, GEICO would be required to pay it.

In *Austin v. Dionne, supra,* the court was faced with a state statute similar to section 35–2106(g). The statute precluded any person from receiving payment for damages arising from an automobile accident when that person was eligible to receive compensation for the same injuries under "any program, group contract or other arrangement for payment of benefits." 909 F.Supp. at 274 n. 2. The plaintiff in *Austin* was injured when the defendant's car collided with his truck. For the time that he missed from work as a result of his injuries, the plaintiff sought to recover lost wages under both his automobile insurance policy and his ERISA plan. At trial, the defendant sought to bar the plaintiff from introducing evidence of those lost wages because they had been paid or were payable to the plaintiff under either the insurance policy or the ERISA plan. The defendant argued that collecting benefits from a tortfeasor as well as from an insurance carrier constituted double recovery, in violation of Pennsylvania law. The court agreed and excluded the evidence, holding that the Pennsylvania statute prohibiting double recovery was not pre-empted by ERISA because its application "would not result in interference with the [ERISA plan] ... [but] would merely prevent collection of a windfall by Austin." *Id.* at 278. The court ruled that the state statute would be pre-empted "only when application of the prohibition against double recovery [had] the *effect* of regulating, and interfering with, claims by or against an employee benefits plan operating under ERISA." *Id.* (emphasis in original). It

saw "no reason why Pennsylvania's policy of prohibiting double recovery should not be given full effect, so long as doing so does not shift liability to the [ERISA plan]." *Id.* (footnote omitted).

In this case, the trial court correctly held that application of D.C.Code § 35–2106(g) did not regulate, or interfere with, Ms. Fisher's ERISA Plan. The court noted that section 35–2106(g)

> does not mandate that an ERISA plan provide coverage where coverage from other sources is not provided. The statute only says that PIP coverage will fill in those areas where the ERISA plan does not provide coverage. If the ERISA plan provided no coverage, consistent with § 2106(g), the PIP coverage would pay the entire amount claimed.

Because the statute does not "shift[ ] ultimate liability for medical and health care benefits to the ERISA [Plan]," *Travitz,* 13 F.3d at 710, it does not regulate or restrict the Plan in any way. Section 35–2106(g) is a law of "general application [which] does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, [and] the mere fact that the statute [might have] some economic impact on the plan does not require that the statute be invalidated." *Rebaldo v. Cuomo,* 749 F.2d 133 (2d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). Therefore, we conclude, the effect of section 35–2106(g) on the ERISA plan is "too tenuous, remote, or peripheral ... to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. 2890.

The numerous cases on which Ms. Fisher relies are all distinguishable because, in each of them, the statute in question conflicted with a provision or right of the ERISA plan, thereby shifting the burden of payment onto the ERISA plan in circumstances in which it would not otherwise have borne that burden. *See, e.g., FMC Corp., supra* note 10 (state law precluding subrogation from tort recovery

contradicted ERISA plan's right to subrogation); *Travitz, supra* note 8 (state law precluding subrogation from tort recovery conflicted with ERISA plan provision that members could not receive benefits if they were recoverable through legal action or settlement); *Lincoln Mutual Casualty Co. v. Lectron Products, Inc., Employee Health Benefit Plan,* 970 F.2d 206 (6th Cir.1992) (statutorily required coordination of benefits clause in no-fault insurance policy conflicted with provision in ERISA plan holding no-fault insurers primarily responsible); *Wall, supra* note 8 (state law prohibiting subrogation conflicted with ERISA plan provision entitling it to subrogation for any expenses paid under the plan). By contrast, D.C.Code § 35–2106(g) in no way affects the rights or obligations of the ERISA Plan in this case and does not shift any greater burden onto the Plan than it would otherwise have to bear.

Thus we hold that the trial court properly granted GEICO's motion for summary judgment. That judgment is accordingly

*Affirmed.*