TRUSTEES OF MEASE HOSPITAL, INC., d/b/a Mease Health Care, Plaintiff,

v.

Anthony VELARDOCCHIA and Nancy Velardocchia, his wife, Defendants,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Third Party Defendant.

No. 90–1299–CIV–T–17.

United States District Court, M.D. Florida, Tampa Division.

Nov. 13, 1991.

Joseph Giambalvo, Giambalvo & Stolz, Clearwater, Fla., for plaintiff Trustees of Mease Hosp., Inc.

Thomas D. Masterson, St. Petersburg, Fla., for defendants Anthony and Nancy Velardocchia.

John Charles Lenderman, Harris, Barrett, Mann & Dew, St. Petersburg, Fla., for defendant Prudential Ins. Co. of America.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on cross-motions for summary judgment filed by Defendants, Anthony Velardocchia and Nancy Velardocchia, and Third Party Defendant, Prudential Insurance Company of America ("Prudential"). Both Defendants and Third Party Defendants filed supplemental memoranda in support of the pending motions.

## I. STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

## II. FACTS

On July 12, 1988, Defendant, Nancy Velardocchia, was injured when her motor vehicle, which was sitting in a line of traffic, was struck from the rear by a vehicle operated by Martin B. Gonzalez. Dkt. 19. At the time of the accident, Nancy Velardocchia was employed by NCR Corporation ("NCR") and was a beneficiary of NCR's

Employee Welfare Benefit Plan (the "Plan"). Dkt. 13 at 1. The Plan was administered by Third Party Defendant, Prudential. No insurance indemnity contract was involved. Dkt. 8 at 3.

In August, 1989, as a result of injuries sustained in the automobile accident, Nancy Velardocchia was hospitalized at Mease Hospital, Inc. Subsequently, Mease Hospital, Inc., Plaintiff, rendered hospital bills for the aforementioned hospitalization to Defendant, Nancy Velardocchia. Dkt. 19 at 2. Defendant's medical bills totalled $16,803.86. Dkt. 20 at 2 and Dkt. 19, attachment.

Nancy Velardocchia filed an action against Martin B. Gonzalez in Circuit Court of Pinellas County. An additional claim for loss of consortium was filed by her husband, Anthony Velardocchia. These claims were eventually settled for a total of $25,-000.00, Martin B. Gonzalez's policy limit. Dkt. 19 at 3. In addition, Nancy Velardocchia exhausted her personal injury protection, medical payments coverage, and uninsured/underinsured motorist coverage under a motor vehicle insurance policy with Allstate Insurance Company. Dkt. 19 at 2.

Defendant, Nancy Velardocchia, eventually submitted the unpaid balance of her medical bills to Third Party Defendant, Prudential. Defendant's claim was denied on the basis of the following exclusion contained in the Employee Welfare Benefit Plan:

> Any charges for services in connection with an accident or illness, as defined in SECTION 2, paragraph (E) of this PART, to the extent to which payments as a judgment, settlement or otherwise are made or may be expected to be made by any person or persons considered responsible for the condition(s), or by their insurers. This exclusion shall not operate to withhold regular Plan benefits if the Employee agrees in writing to reimburse the Company all benefits paid in connection with such illness or accident.

Dkt. 15 at 5.

Defendants failed or refused to execute an agreement assigning to NCR "any pay-ment received by or expected to be received by court judgment, settlement or otherwise from the person responsible or from such person's liability insurance in an amount up to the payments made by NCR. . . ." Dkt. 19 and attached assignment agreement. Defendants contend that Florida Statutes, Section 627.7372, prevented Nancy Velardocchia from recovering her medical expenses from the party who was at fault. Dkt. 15 at 6.

## III. ISSUES

1. WHETHER FLORIDA'S COLLATERAL SOURCE STATUTE, SECTION 627.7372, FLORIDA STATUTES, IS PRE–EMPTED BY ERISA.

■ Defendants, Anthony Velardocchia and Nancy Velardocchia, do not question that the pre-emption clause of ERISA results in pre-emption of "any and all state laws insofar as they may now or hereinafter relate to any employee benefit plan." Dkt. 16, p. 7. However, Defendants later restricted their concession regarding ERISA's pre-emption to "when there is a conflict between ERISA and state law."

In *California Federal Savings and Loan Association v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987), the Supreme Court of the United States discussed the ways in which a federal law can pre-empt a state statute. The Court said:

> Federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. Second, congressional intent to pre-empt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. . . . As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. [Citations omitted.]

*Id.* at 280–81, 107 S.Ct. at 689. Stating that it was Congress' clear intent to exempt ERISA employee benefit plans from direct state insurance regulation, the Supreme Court held in *FMC Corporation v. Holliday,* —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), that ERISA pre-empted Pennsylvania's Motor Vehicle Financial Responsibility Law.

As stated in *FMC,* "Three provisions of ERISA speak expressly to the question of pre-emption:

'Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.' Section 514(a), as set forth in 29 U.S.C. Section 1144(a) (pre-emption clause).

'Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.' Section 514(b)(2)(A), as set forth in 29 U.S.C. Section 1144(b)(2)(A) (saving clause).

'Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.' Section 514(b)(2)(B), as set forth in 29 U.S.C. Section 1144(b)(2)(B) (deemer clause).

*Id.* —— U.S. at ——, 111 S.Ct. at 407.

In *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the mechanics of the pre-emption provisions of ERISA were summarized as follows:

If a state law "relate[s] to ... employee benefit plan[s]," it is pre-empted. Section 514(a). The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance." Section 514(b)(2)(A). The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company. Section 514(b)(2)(B).

*Id.* 107 S.Ct. at 1552.

In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983), the Court concluded, "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." The Court added that Congress used the words "'relate to' in section 514(a) [the pre-emption clause] in their broad sense." *Id.*

Florida's collateral source statute, Section 627.7372, Florida Statutes, provides:

(1) In any action for personal injury or wrongful death arising out of the ownership, operation, use, or maintenance of a motor vehicle, the court shall admit into evidence the total amount of all collateral sources paid to the claimant, and the court shall instruct the jury to deduct from its verdict the value of all benefits received by the claimant from any collateral source.

(2) For purposes of this section, "collateral sources" means any payments made to the claimant, or on his behalf, by or pursuant to:

(a) The United States Social Security Act; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits.

(b) Any health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits available to the claimant, whether purchased by him or provided by others.

(c) Any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the costs of hospital, medical, dental, or other health care services.

(d) Any contractual or voluntary wage continuation plan provided by employers or any other system intended to provide wages during a period of disability.

(3) Notwithstanding any other provision of this section, benefits received under the Workers' Compensation Law or the Medicaid program of Title XIX of the Social Security Act or from any medical services program administered by the Department of Health and Rehabilitative Services shall not be considered a collateral source.

The plain language of Florida's collateral source statute has a "reference" to benefit plans within the meaning of ERISA:

The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

Section 3(1), 29 U.S.C. Section 1002(1).

In addition, the Court has applied the pre-emption clause to ensure that employee benefit plans will be governed by only a single set of regulations. The Court stated in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), that the most efficient way to meet administrative needs "is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Id.* at 9, 107 S.Ct. at 22. Thus, under the first step of the analysis, Florida's collateral source statute is pre-empted by ERISA.

Under the second step of the analysis, the saving clause excepts from the pre-emption clause laws that "regulat[e] insurance." Section 514(b)(2)(A). In *Pilot Life*, Justice O'Connor outlined the factors to determine whether a state law falls under the saving clause. *Pilot Life*, 107 S.Ct. at 1553 (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985)). Courts should look first to the language of the saving clause, and then to the criteria used in interpreting the phrase "business of insurance" (as used in the McCarran–Ferguson Act, 15 U.S.C. Section 1012(a)). *Id.* Those criteria are:

(1) Whether the practice has the effect of transferring or spreading a policyholder's risk;

(2) Whether the practice is an integral part of the policy relationship between the insurer and the insured; and

(3) Whether the practice is limited to entities within the insurance industry.

*Id.* 107 S.Ct. at 1553–54 (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)).

Applying these criteria, the court in *Pugh v. Wilson*, 693 F.Supp. 1096 (S.D.Fla. 1988), concluded that Florida's collateral source statute is not a law regulating insurance. The court recognized that the statute is contained within Florida's Insurance Code, but added that the statute is simply a rule of evidence requiring verdicts to be reduced by the amount of medical benefits already paid on the victim's behalf. *Id.* at 1101. Stating that the statute's purpose is to prevent duplicative recovery, the court concluded that the statute does not affect the policy relationship between the insurer and insured or the insured's recovery.

However, when applying the third step of the pre-emption analysis, the *Pugh* court determined that Florida's collateral source statute would still be pre-empted by ERISA because of the deemer clause, section 514(b)(2)(B). *Pugh*, 693 F.Supp. at 1101–

1102. Quoting *Metropolitan Life*, 471 U.S. at 747, 105 S.Ct. at 23, the *Pugh* court recognized that plans which purchase insurance from a commercial company are left open to state regulation, but that self-insured plans are not. Thus, the *Pugh* court concluded that a self-insured employee benefit plan could not be deemed to be an insurance company for the purposes of the collateral source statute, even if the statute were construed as a law regulating insurance. The *Pugh* court's reading of the deemer clause is consistent with *FMC*. See *FMC*, ⸺ U.S. at ⸺, 111 S.Ct. at 407–08.

Under this third step of the ERISA preemption analysis, even a state law regulating insurance will be pre-empted as applied to self-insured employee benefit plans. *Pugh*, 693 F.Supp. at 1102. The Plan in this case is self-insured. Although administered by Prudential, no insurance indemnity contract was involved. As in *Pugh*, the Plan in this case cannot be deemed to be an insurance company for the purposes of Florida's collateral source statute. Thus, Florida's collateral source statute is pre-empted as applied to NCR's self-insured employee benefit plan administered by Third Party Defendant, Prudential.

2. WHETHER THE EXCLUSION IN NCR'S PLAN PRECLUDES PAYMENT OF DEFENDANT'S UNPAID MEDICAL BILLS.

▮ NCR's Plan excluded payment for "any charges for services in connection with an accident or illness ... to the extent to which payments as a judgment, settlement or otherwise are made or may be expected to be made by any person or persons considered responsible for the condition(s), or by their insurers." As there are no allegations of contributory negligence on the part of the Defendant, it is presumed that Martin B. Gonzalez was the sole person "considered responsible for the condition(s)...." Thus, the settlement made by his insurer is the sole payment to which the above exclusion applies. As Defendant, Nancy Velardocchia, was not "responsible for the condition(s)," this exclusion does not apply to any payments made by her or her insurers.

An ambiguity exists as to the interpretation of "any charges for services in connection with an accident or illness ... to the extent to which payments ... are made...." The exclusion may be interpreted as limited to the extent that payments are made for the services in connection with an accident or illness. Alternatively, the exclusion may be interpreted as applying to all payments received, regardless of whether such payments were for medical expenses, lost wages, pain and suffering, or some other basis for recovery.

The benefit provisions of an ERISA regulated group insurance program must be interpreted under principles of federal substantive law. *Pilot Life Ins.*, 481 U.S. at 56–57, 107 S.Ct. at 1557–58, 95 L.Ed.2d at 53–54. The federal caselaw on the issue of insurance benefits is still in its formative stage, but "must embody commonsense canons of contract interpretation." *Burnham v. Guardian Life Ins. Co. of America*, 873 F.2d 486, 489 (1st Cir.1989). As noted by the court in *Wickman v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir.1990), courts have held nearly unanimously, "that insurance contracts must be liberally construed in favor of a policyholder or beneficiary ... and strictly construed against the insurer...." See also *A.W.G. Farms, Inc. v. Federal Crop Ins. Corp.*, 757 F.2d 720, 726 (8th Cir.1985); *Howard v. Federal Crop Ins. Corp.*, 540 F.2d 695, 697 (4th Cir.1976).

Thus, the Plan's exclusion provision is interpreted as excluding payment for charges only to the extent that the settlement with Martin B. Gonzalez represented settlement of Nancy Velardocchia's claim for payment of such charges. This Court finds Third Party Defendant, Prudential, responsible for payment of medical expenses for which Nancy Velardocchia has not received payment from Martin B. Gonzalez' insurer.

There exists genuine issues of material fact regarding whether and to what extent the payments received by Nancy Velardocchia from Martin B. Gonzalez' insurer repre-

sent payment for medical expenses submitted to Prudential. Accordingly, it is

ORDERED that Partial Summary Judgment is granted to Defendants/Third Party Plaintiffs. Defendants' request for attorney's fees pursuant to Rule 11 is denied. Third Party Defendant's Motion for Summary Judgment is denied. The Court retains jurisdiction for determination of remaining issues in this case.

DONE and ORDERED.