Ryan DANOWSKI, a minor by his guardian ad litem, Stanley DANOWSKI and Stanley Danowski in his own right, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civil Action No. 94–4267.

United States District Court, D. New Jersey.

May 3, 1996.

Jerrold Allen, Robert M. Silverman, Soffian & Allen, Haddonfield, N.J., for Plaintiffs.

Faith S. Hochberg, United States Attorney, Dorothy Donnelly, Assistant United States Attorney, Trenton, N.J., for Defendant.

## OPINION

ORLOFSKY, District Judge:

Ryan Danowski ("Ryan"), a minor, and his father, Stanley Danowski, filed this action seeking to recover for personal injuries suffered by Ryan as the result of a collision between his bicycle and a United States Postal Service ("Postal Service") vehicle. This Court has jurisdiction under 28 U.S.C. § 1346(b) and the Federal Tort Claims Act ("FTCA").[1]

Defendant, The United States of America, has filed a motion to dismiss for failure to state a claim, or, alternatively, for partial summary judgment, raising the following issues: (1) Should the claim of Stanley Danowski for the reimbursement of medical expenses be dismissed for his alleged failure to comply with the notice requirements of the FTCA?, and, (2) Does the Employee Retirement Income Security Act[2] ("ERISA") preempt the New Jersey Collateral Source

---

1. 28 U.S.C.A. §§ 2671–2680 (West 1994 & Supp. 1995). Specifically, 28 U.S.C.A. § 2674 (West 1994) partially waives the sovereign immunity of the United States.

2. 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp. 1995).

Rule[3] which would otherwise preclude plaintiffs from recovering the medical expenses which have already been paid by Stanley Danowski's employer-provided health care reimbursement plan? Because this Court answers the first of these questions in the negative, and the second in the affirmative, the Government's motion will be denied in its entirety.

## I. Facts and Procedural History

On September 17, 1992, Ryan Danowski was seriously injured when the bicycle he was riding collided with a Postal Service vehicle. The disputed facts surrounding the accident itself are not material to this motion.

It is undisputed, however, that at the time of the accident, Ryan had health care coverage under the Pfizer Medical Plan (the "Plan"), which Stanley Danowski obtained through his employer. The Plan is a self-funded employee welfare benefit plan governed by ERISA. Medical benefits under the Plan are administered by Metropolitan Life Insurance Co. *See* Affidavit of Robert M. Silverman, Esq. ("Silverman Aff."), exhibit E.

The Plan documents submitted by Stanley Danowski in opposition to this motion, contain an exclusion for "services or supplies for which payment or reimbursement is received by or for the account of the individual as a result of a legal action or settlement." Affidavit of Stanley Danowski ("Danowski Aff."), exhibit B at 49. Pursuant to this exclusion, the Plan has made claims for reimbursement of certain sums paid on Ryan's behalf, should there be a recovery in, or settlement of, the instant action. *See id.* (letter from J. Hickey, dated June 22, 1993; letter from William M. Petrie, dated Nov. 4, 1992); Silverman Aff., exhibit E. Nevertheless, neither the Plan, nor the Plan's administrator, Metropolitan Life Insurance Company, has sought to intervene in this action, and neither is a party to these proceedings.

On June 25, 1993, a notice of claim was submitted to the Postal Service based on the September 17, 1992 accident.[4] Danowski Aff., exhibit A. The claim form was received by the Postal Service on June 30, 1993. *See* Declaration of Dorothy Donnelly, attachment. Box 2 of the Standard Form 95 ("SF–95"), which seeks to elicit the name and address of the claimant, reads, "Ryan Danowski, a minor by his guardian" and, on a new line, "Stanley Danowski." Danowski Aff., exhibit A. Box 8 of the SF–95 states that the "[c]laimant was struck by a postal vehicle while on his bicycle." The remainder of the SF–95 describes the nature of Ryan's injuries (Box 10), and sets forth a claim for $250.00 in property damage, for the value of the bicycle (Box 12g), and a claim for $2,000,000.00 for personal injury (Box 12b). *Id.* Finally, Ryan's accident insurance coverage is described (Box 15), and Box 18 of the SF–95 declares that the "[i]nsurer has placed us on notice of a subrogation claim for all medical expenses paid." *Id.* The SF–95 is signed by Stanley A. Danowski.

Along with the completed SF–95, counsel for plaintiffs enclosed a copy of the police report of the September 17, 1992 accident, and an itemization of medical expenses which had been incurred in treating Ryan. This itemization of Ryan's medical "Specials" set

---

**3.** New Jersey's codification of the Collateral Source Rule provides:

Personal injury or wrongful death actions; benefits from sources other than joint tortfeasor; disclosure; deduction from plaintiff's award

In any civil action brought for personal injury or death, ... if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act. N.J.Stat.Ann. § 2A:15–97 (West Supp.1995).

**4.** The FTCA provides that no action for damages may be instituted against The United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C.A. § 2675(a) (West 1994).

forth 18 different amounts paid to physicians, physical therapists, hospitals and pharmacies, totalling $56,255.78 as of June 25, 1993. Danowski Aff., exhibit A.

Almost a year later, on June 2, 1994, plaintiffs' counsel was contacted, for the first time regarding this claim, by a Ms. Julia Scott of the Postal Service Claims Division "requesting medical specials." Silverman Aff. ¶ 4. In response to Ms. Scott's request, on June 2, 1994, plaintiffs' counsel sent Ms. Scott a letter, enclosing an up-dated itemization of Ryan's "medical specials" totalling $72,889.49, for amounts paid through December, 1993. Silverman Aff. ¶ 3, exhibit D. Plaintiffs' counsel received no further communication from the Postal Service.

On September 2, 1994, plaintiffs filed their complaint in this action, having allowed far more than the requisite six months to elapse from the time the Postal Service received their notice of claim, on June 30, 1993.[5]

On February 21, 1996, the Government filed its notice of motion "to dismiss the claim of Stanley Danowski for medical expenses pursuant to Fed.R.Civ.P. 12(b)(1) or alternatively for summary judgment under Rule 56." Defendant's Notice of Motion.[6] The Government argues that Stanley Danowski's claim for reimbursement of medical expenses is barred because the SF–95 does not indicate that he, or his insurer, filed a "notice of claim." Simply put, the Government's position is that the SF–95 "does not list Stanley Danowski as a claimant and the injuries listed do not include medical expenses." Letter Brief in Support of United States' Motion to Dismiss, or, alternatively, for Partial Summary Judgment ("United States' Brief") at 3–4. Moreover, according to the Government, even if the claim is not barred by the FTCA, the New Jersey Collateral Source Rule, as embodied in N.J.Stat.Ann. § 2A:15–97, operates to foreclose the recovery of any

medical expenses already paid by the Plan on Ryan's behalf.

## II. Standard for Dismissal Under Rule 12(b)(1).

The Government has moved to dismiss Stanley Danowski's claim for reimbursement of medical expenses for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). This Court must, as a threshold matter, conduct an independent analysis to determine whether subject matter jurisdiction exists. Fed.R.Civ.P. 12(h)(3). A district court may also grant a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "based on the legal insufficiency of a claim." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408 (3d Cir.) (quoting *Bell v. Hood,* 327 U.S. 678, 683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

On a Rule 12(b)(1) motion, the plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. *Id.* at 1409. In actions brought under the FTCA, each plaintiff must persuade the court that he or she has complied with the exhaustion requirement of the FTCA prior to filing suit. *McNeil v. United States,* 508 U.S. 106, 109, 113 S.Ct. 1980, 1982, 124 L.Ed.2d 21 (1993). This requirement includes the proper presentation of a claim to the appropriate federal agency and a demand therein for a sum certain. *Id.* at 107 n. 1, 113 S.Ct. at 1981 n. 1 (citing statute).

## III. Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Hersh v. Allen Products, Co.,* 789 F.2d 230, 232 (3d Cir.

---

**5.** Pursuant to the FTCA, "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." *Id.*

**6.** During a telephone conference with the Court on March 19, 1996, conducted on the record, counsel for plaintiffs stipulated to allow the Court to consider the Government's second ground in support of its motion for partial summary judgment, namely, the New Jersey Collateral Source Rule.

1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). The district court must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1365–66 (3d Cir.1996). In deciding whether there is a disputed issue of material fact the Court must draw all inferences from the underlying facts in favor of the non-moving party. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987) (citation omitted); *Pollock v. American Telephone & Telegraph Long Lines*, 794 F.2d 860, 864 (3d Cir.1986).

■ For the purposes of this motion, the parties do not dispute the facts outlined above. Thus, this motion presents only questions of law and is ripe for summary judgment. *Nation Wide, Inc. v. Scullin*, 256 F.Supp. 929, 932 (D.N.J.1966).

## IV. Analysis

### A. The Jurisdictional Requirements of the FTCA

■ Because the FTCA constitutes a limited waiver of the sovereign immunity of the United States, its provisions must be strictly construed. *Pascale v. United States*, 998 F.2d 186 (3d Cir.1993). The Government contends that only the claim filed on behalf of Ryan Danowski, and not the claim of Stanley Danowski, or that of the "Insurer [the REAL party in interest in recovering the sums expended for medical treatment]" was properly presented to the Postal Service in this case. United States Brief at 3.[7] Because a properly presented administrative claim is a juris-

dictional prerequisite to the filing of a FTCA suit in this Court, the Government argues that any claim by Stanley Danowski for reimbursement of medical expenses must fail.[8] *See, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir.1995) (timely administrative presentation of a claim is a jurisdictional prerequisite to suit under the FTCA) (citation omitted); *Cadwalder v. United States*, 45 F.3d 297, 299 (9th Cir.1995) (FTCA administrative claim prerequisite is jurisdictional); *Livera v. First National State Bank of New Jersey*, 879 F.2d 1186, 1194 (3d Cir. 1989) (FTCA requirement that a claimant first present an administrative claim to the appropriate federal agency before commencing suit in federal court is a jurisdictional requirement that cannot be waived and "that must be strictly construed").

The issue before this Court on the Government's motion to dismiss Stanley Danowski's claim seeking reimbursement of medical expenses, including those advanced by the plan, is whether that claim was properly presented to the Postal Service. The Government contends that Box 2 of the SF–95 which seeks to elicit the "Name, Address of claimant, and claimant's personal representative, if any" reads "Ryan Danowski, a minor by his guardian, Stanley A. Danowski." United States' Brief at 6. Although the foregoing quote, taken from the Government's brief, reflects that there is a comma between the word "guardian" and the name "Stanley A. Danowski," it is clear from the SF–95 that there is no comma following the word "guardian," and the name "Stanley A. Danowski," appears on a new line. Danowski Aff., exhibit A. Moreover, it is undisputed

---

**7.** The Government similarly suggests, in the final sentence of its letter reply brief, that the Danowskis' claim form "does not adequately raise any claim on behalf of the insurer." United States Reply Brief at 7. In support of this assertion, the Government cites no caselaw whatsoever. Indeed, this Court can find no support for such an assertion, which contradicts the Federal Rules of Civil Procedure. A party "in whose name a contract has been made for the benefit of another ... may sue in that person's own name without joining the party for whose benefit the action is brought." Fed.R.Civ.P. 17(a). Stanley Danowski was obliged by a contract to reimburse the Plan. Thus, the Plan, as the beneficiary of the contract, need not sue in its own name. Because

this Court finds that the claim of Stanley Danowski was properly presented to the Postal Service, it is unnecessary to decide whether Ryan, as well as Stanley Danowski, could sue in his own name for the benefits paid on his behalf by the Plan.

**8.** Plaintiffs point out that the Government, in its answer, admitted that a claim by Stanley Danowski was submitted to the Postal Service. *See* Complaint and Answer ¶ 13. While this is apparently true, it is of no import, since compliance with the notice requirements of the FTCA is a prerequisite to the district court's subject matter jurisdiction and cannot be waived. *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir.1971).

that the names of both Ryan Danowski and Stanley A. Danowski appear in Box 2 of the claim form. *Id.*

According to the Government, Stanley Danowski signed the form only in his capacity as guardian for his minor child, although no such qualifying language appears in the signature box. *Id.* Naturally, Stanley Danowski argues that his claim for medical expenses was properly presented to the Postal Service.

Happily, the resolution of this motion does not depend on the placement of a comma. Plaintiffs contend, and the Government does not deny, that a single SF–95 can be used to present the appropriate federal agency with related claims filed on behalf of more than one individual claimant. Plaintiffs' Letter Brief in Opposition to the Motion of the United States at 5; Letter Reply Brief in Support of United States' Motion to Dismiss, or, alternatively, for Partial Summary Judgment ("United States' Reply Brief") at 7.

■ When a single claim form is used to present multiple claims, it "must set forth sufficient facts to warrant an agency investigation and to constitute 'constructive notice' of the other theory of liability." *Dondero v. United States,* 775 F.Supp. 144, 149 (D.Del. 1991) (quoting *Johnson v. United States,* 594 F.Supp. 728, 730 (E.D.N.Y.1984), *aff'd,* 788 F.2d 845 (2d Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986)). The Government insists, however, that the Danowskis' SF–95 was insufficient to give the Postal Service "constructive notice" of the claim by Stanley Danowski and to alert it to investigate that claim. *Id.*

In support of this contention, the Government cites *Dondero, supra,* for the proposition that a spouse's derivative claim for loss of consortium is properly dismissed where that claim was not presented in the SF–95. *See id.* at 148–49, and cases cited therein; *see also Ferguson v. United States,* 793 F.Supp. 107 (E.D.Pa.1992) (since loss of consortium is a separate cause of action under relevant state law, a distinct administrative

claim must be made). The *Dondero* court held that a derivative claim is not preserved merely "by making reference to the spouse, each spouse must fulfill all jurisdictional requirements for their (sic) independent claims." *Id.* at 149. More specifically, the court held that, where the claim form failed to state the nature of the services lost, or any amount expended for replacement services, the claim form did not allege facts sufficient to put the Government on notice of a claim for loss of spousal services. *Id.* at 150. *See also, Barrett v. United States,* 845 F.Supp. 774, 783 (D.Kan.1994) (letter notifying Bureau of Prisons of "wrongful death" claim was insufficient notice of potential "survival" action); *Frantz v. United States,* 791 F.Supp. 445, 451 (D.Del.1992) ("wrongful death" claim is not preserved where claim form stated only "survival" claim on behalf of decedent and form was signed by decedent's spouse in her capacity as "Administratrix" only).

■ The measure of damages differs in separate and distinct causes of action, such as in "wrongful death" and "survival actions," and such damages are cumulative, not duplicative. The primary concern expressed in the caselaw is that the Government should know, as nearly as possible, the total amount of its potential liability during the administrative review period in order to facilitate settlement. This comports with the legislative purpose of the FTCA, which was "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S.Rep. No. 1327, 89th Cong., 2d Sess. 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. at 2515, 2516 (cited in *Tucker v. United States Postal Service,* 676 F.2d 954, 958 (3d Cir.1982)).[9]

The courts, therefore, routinely dismiss actions brought on legal theories not presented to the relevant federal agency, legal theories which could expose the agency to damages which were unforeseen during the administrative review period and which could potentially have affected the Government's ability

---

**9.** Section 2672 empowers agency heads, or their designees, to effect settlement of claims. 28

U.S.C.A. § 2672 (West 1994).

to conduct meaningful settlement negotiations.

▋ Where the failure to comply with the notice requirements of the FTCA is merely technical, however, and there is no danger of the Government being "surprised" by a claim in the legal proceeding which was not presented to the relevant agency during the administrative review period, the courts are not constrained to dismiss imperfectly presented claims. *See Leaty v. United States,* 748 F.Supp. 268 (D.N.J.1990). In *Leaty,* the Government moved to dismiss the plaintiff's lawsuit because, on his SF–95, although the plaintiff's name appeared along with that of his father and mother as claimants, the claim form was signed only by the mother. The form also provided a single sum for the amount claimed for personal injuries by mother and son. *Id.* at 269.

As in the instant case, Leaty's attorney sent the Postal Service a letter of representation, reflecting the amount of Leaty's medical bills. *Id.* The *Leaty* court held that the policy goals which motivated the adoption of the FTCA were well served by Leaty's administrative claim and his attorney's letter, even if the SF–95 was "technically defective." *Id.* at 271. Crucial to the court's conclusion in *Leaty,* and equally important in the present case, was the fact that the Postal Service had done nothing to make the plaintiff aware of the alleged technical flaws in his claim form, although the description of the claim adequately stated the nature of the plaintiff's injuries. *Id.* at 269.

The Government also relies on *Green v. United States,* 385 F.Supp. 641 (S.D.Cal. 1974). In *Green,* the district court dismissed a mother's claim for medical expenses for failure to file an administrative claim, despite finding that her daughter had properly presented a claim for negligence. *Id.* at 644. The administrative claim in *Green,* however, was filed by the daughter's conservator and the court does not state that the mother's name appeared anywhere on the claim form in question. Moreover, the *Green* court nowhere indicates that the claim form submitted to the agency was accompanied by a

detailed factual description of the medical expenses incurred on behalf of the child. Finally, the *Green* court analogized the mother's claim for reimbursement of medical expenses to a claim for loss of consortium, an analogy which this Court finds unpersuasive, particularly in light of the factual record in this case. *Id.* at 643.

The SF–95 filed by Stanley Danowski listed his name only once at the top of the form and was signed by him only once. No doubt it would have been a wiser course, in retrospect, for Stanley Danowski to have filed two SF–95s, or, at least, to have signed the form in question twice, once in his individual capacity, and once in his capacity as Ryan's guardian. Nevertheless, the claim form clearly sets forth a claim for personal injuries, including fractures of the tibia and fibula, "severe degloving" of the left leg, knee and thigh, and peroneal nerve damage. Danowski Aff. exhibit A. Furthermore, the two letters from plaintiffs' counsel, the first of which accompanied the SF–95, and the second, written about a year later in response to a telephone request from a Postal Service representative, itemize Ryan's medical expenses. *See id.;* Silverman Aff. ¶ 3, exhibit D. Given the submission to the Postal Service of two detailed lists of medical expenditures incurred on behalf of Ryan Danowski, it is difficult to fathom the Government's assertion that the Postal Service was not put on notice of a claim for medical expenses. Moreover, the SF–95 also sets forth the fact that the Danowskis had been "placed on notice [by the Plan] of a subrogation claim for all medical expenses paid." Danowski Aff., exhibit A.

If Stanley Danowski were now attempting to assert a claim for the loss of his child's services, a claim which nowhere appears on the SF–95, and for which the Postal Service received no "constructive notice," the Government's position might well be persuasive. Stanley Danowski is not, however, attempting to prosecute a claim under such a legal theory. The legal theory under which he seeks to proceed is his independent entitlement to reimbursement for medical expenses he incurred on Ryan's behalf.[10] All that

---

10. Stanley Danowski's claim for reimbursement

of medical expenses includes not only amounts

*Dondero* requires is that the SF–95, and accompanying documents, if any, state "sufficient facts to warrant Government investigation into the second claim." *Dondero,* 775 F.Supp. at 150. In this case, Stanley Danowski clearly set forth the amount of medical expenses incurred on Ryan's behalf up to the time of the filing of the administrative claim with the Postal Service.

Furthermore, even if this Court were to accept the Government's argument, Ryan's claim for personal injuries would still have included amounts for future medical expenses. In fact, after his administrative claim was filed, Ryan continued to receive treatment for his injuries at the expense of the Plan and Stanley Danowski. Indeed, the difference between the amount of medical expenses itemized in the initial letter, dated June 25, 1993, which accompanied the SF–95, and those calculated through the end of that year was over $16,633.00. As the court pointed out in *Leaty,* the result which the Government advocates would, in effect, authorize "administrative agencies to modify the jurisdiction of the courts that will pass upon the merits of their defenses," a result which is "akin to letting the fox guard the chicken coop." *Leaty,* 748 F.Supp. at 272.

To foreclose the recovery of any claim for medical expenses incurred on Ryan's behalf, as the Government urges this Court to do, would reward the Postal Service for its inactivity during the initial six-month administrative review period and beyond. The first attempt by the Postal Service to "investigate" the Danowskis' claim, a telephone call to plaintiffs' attorney on June 2, 1994, did not take place until almost a year after the SF–95 was filed. Silverman Aff. exhibit D. The record also reflects that the Postal Service made no other serious effort to settle this claim in the more than fourteen months between the time the SF–95 was received by the Postal Service and the time suit was filed, nor did the Postal Service, although it was aware of the medical expenses involved, seek to clarify any ambiguity in the nature of

the claims asserted. Silverman Aff. ¶¶ 2–4. This record of inactivity, in light of the position now advanced by the Government, amounts to "invit[ing] the plaintiff to continue on an erroneous course." *Leaty,* 748 F.Supp. at 273.[11] Having been aware of Ryan's medical bills for fourteen months, the Postal Service cannot now be heard to complain that it received insufficient notice that a claim for reimbursement of medical expenses was being made in the SF–95.

It is clear from the legislative history of the FTCA that the "notice of claim" procedures are designed to give the appropriate federal agency the opportunity to evaluate the potential monetary exposure that each claim presents so as to facilitate the settlement of the claim. It is also clear that the notice provisions of the FTCA were not designed to allow the federal agency to retreat from reality behind an impenetrable bureaucratic wall of its own creation.

On June 25, 1993, plaintiffs' counsel submitted to the Postal Service a notice of claim reflected on the traditional SF–95, accompanied by an itemized description of the medical expenses which had been incurred in treating Ryan for the injuries he sustained. There was no reaction from the Postal Service until June 2, 1994, when a representative of the Postal Service telephoned plaintiffs' counsel and requested an updated list of Ryan's "medical specials," which was promptly supplied. For the Government to argue, in this case, that the Postal Service did not realize or understand that a claim was being made by plaintiffs to recover Ryan's medical expenses and that plaintiffs' health care provider had asserted a claim for reimbursement of those expenses, suggests an approach to claims management by the Postal Service which is reminiscent of the works of Lewis Carroll.

This Court finds, based upon the undisputed facts of record, that the notice of claim filed by plaintiffs' counsel, gave the Postal Service "constructive notice" that a claim was

---

for which the Plan has provided payment but also includes amounts for "deductibles, co-pays, and non-covered expenses." Danowski Aff. ¶ 4.

11. *Compare Bialowas, supra* at 1048 (legal action was properly dismissed where Postal Inspector called claimant's attention to defects in his SF–95 and those defects were not remedied).

being presented to recover the past and future medical expenses reasonably necessary for the treatment of Ryan Danowski's injuries. Accordingly, the Government's motion to dismiss the claim of Stanley Danowski for reimbursement of medical expenses will be denied.

## B. ERISA Preëmption of the New Jersey Collateral Source Rule

 In the alternative, the Government argues that the amount of any recovery by plaintiffs in this case must be reduced by the amount of medical expenses already paid on Ryan's behalf by the Plan, pursuant to N.J.Stat.Ann. § 2A:15–97, the so-called Collateral Source Rule.[12] The Plan is a self-funded welfare benefit plan within the meaning of ERISA. *See* 29 U.S.C.A. § 1002(1) (West 1985); Silverman Aff. exhibit E. Plaintiffs contend that New Jersey's Collateral Source Rule does not apply to this case because it is preëmpted by ERISA. The Government, however, contends that the Collateral Source Rule is not preëmpted in this case. To resolve this question, an examination of the statutory language and the cases construing it must be undertaken.

There are three provisions of ERISA which, taken together, set forth the statutory preëmption scheme:

Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

ERISA Section 514(a) (as codified at 29 U.S.C.A. § 1144(a) (West 1985)) (the "preëmption clause").

Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

ERISA Section 514(b)(2)(A), (as codified at 29 U.S.C.A. § 1144(b)(2)(A) (West 1985)) (the "saving clause").

Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

ERISA Section § 514(b)(2)(B) (as codified at 29 U.S.C.A. § 1144(b)(2)(B) (West 1985)) (the "deemer clause"). Thus, this Court's inquiry involves three questions, which, taken in order are: (1) Does the Collateral Source Rule "relate to" an ERISA plan?; and if so, (2) Is the Collateral Source Rule "saved" because it regulates insurance?; and if so, (3) Can the Plan, in this case, be "deemed" to be an insurance company and, therefore, subject to state regulation by the application of the Collateral Source Rule?

1. Does N.J.Stat.Ann. § 2A:15–97 "relate to" an ERISA Plan?

 A law "relates to" an employee welfare plan if it has "a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Congress "did not mean to preëmpt only state laws specifically designed to affect employee benefit plans." *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 408, 112 L.Ed.2d 356 (1990). In *FMC*, the Court found that an antisubrogation provision in Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") had "reference" to benefit plans governed by ERISA. *Id.* at 59, 111 S.Ct. at 408. The Pennsylvania law stated, in pertinent part, that, "[i]n actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to ... benefits ... paid or payable under section 1719."[13] 75 Pa.Cons.

---

12. See, *supra* note 3 for the text of the statute.

13. Section 1719 referred to "[a]ny program, group contract or other arrangement for pay-

ment of benefits." 75 Pa.Cons.Stat.Ann. § 1719 (1987).

Stat.Ann. § 1720 (1987). In the same way, New Jersey's Collateral Source Rule has "reference" to ERISA plans because it purports to reach all "benefits, other than workers' compensation benefits or the proceeds from a life insurance policy." N.J.Stat.Ann. § 2A:15–97 (West Supp.1995). This conclusion finds support in the Supreme Court's observation that the "pre-emption clause is conspicuous for its breadth." *FMC,* 498 U.S. at 58, 111 S.Ct. at 407.

2. The "Saving Clause" and the "Deemer Clause"

 As noted above, ERISA preserves state laws regulating insurance, banking, or securities. 29 U.S.C.A. § 1144(b)(2)(A) (West 1985). Therefore, a state legislature's decision to make insurers the first source of benefits for an injured party, and, in effect, make the tortfeasor an "excess" insurer, is unassailable as an exercise of traditional state regulation of insurance. However, an ERISA plan may not be "deemed" to be an insurance company. 29 U.S.C.A. § 1144(b)(2)(B) (West 1985). In *FMC,* the Third Circuit had held that the "deemer clause" was only meant to protect "core" ERISA concerns. *FMC,* 498 U.S. at 56, 111 S.Ct. at 406. The Supreme Court disagreed, holding that "the deemer clause relieves plans from all state laws 'purporting to regulate insurance.'" *Id.* at 61, 111 S.Ct. at 409.

In *FMC,* Holliday, after settling a tort claim brought by him in State court, sought and obtained a declaratory judgment in the district court, by virtue of Section 1720 of Pennsylvania's MVFRL, which protected his settlement by preventing FMC from exercising its subrogation rights. There was no dispute that FMC's right to subrogation had been specifically reserved in the plan documents it distributed to Holliday and other FMC employees. In reversing, the Supreme Court stated that Congress did not mean to "require plan providers to design [ERISA welfare] programs in an environment of differing state regulations [which] would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits." *Id.* at

60, 111 S.Ct. at 408 (citing *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 10, 107 S.Ct. 2211, 2216–17, 96 L.Ed.2d 1 (1987)). The Court declared that "Pennsylvania's antisubrogation law prohibits plans from being structured in a manner requiring reimbursement in the event of recovery from a third party." *Id.*

Plaintiffs contend that New Jersey's Collateral Source Rule, if applied to the factual scenario presently before this Court, will achieve the identical result, which is prohibited by ERISA as interpreted by the Supreme Court in *FMC.* Plaintiffs argue that if any recovery they secure is reduced by the amounts previously paid by the Plan, no reimbursement to the Plan will be possible and the purpose which Congress sought to achieve, namely, to allow ERISA plans to control costs through subrogation provisions, will be impermissibly restricted.

The Government urges this Court to adopt a much narrower reading of *FMC.* Citing *Austin v. Dionne,* 909 F.Supp. 271 (E.D.Pa. 1995), the Government contends that the New Jersey Collateral Source Rule simply seeks to prevent double recoveries by plaintiffs and that it has "no effect upon the insurer." United States' Reply Brief at 4.

*Austin* concerned yet another section of Pennsylvania's MVFRL, Section 1722. In pertinent part, Section 1722 provides:

In any action for damages against a tortfeasor ... arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under ... any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable....

75 Pa.Cons.Stat.Ann. § 1722 (Supp.1994). This statute is clearly intended to prevent double recoveries. *See Davish v. Gidley,* 417 Pa.Super. 145, 611 A.2d 1307 (1992) (comparing New Jersey's and Pennsylvania's statutory approaches to prevent double recoveries). In tandem with Pennsylvania's antisubrogation provision discussed in *FMC,* Section 1722 expresses a legislative preference for making the insurer the primary source of

benefits for an injured party. The insurer is not able to seek reimbursement for its expenditures on behalf of the insured (Section 1720), but neither is the insured able to recover twice, once from the insurer and again from the tortfeasor (Section 1722).

In *Austin*, the plaintiff contended he should be allowed to seek damages from the defendant, Dionne, including amounts which had already been paid to him by his ERISA disability plan. Austin based his argument on ERISA's preëmption of Section 1722. *Austin*, 909 F.Supp. at 276. The district court held that ERISA would only preëmpt Section 1722 when "application of the prohibition against double recovery has the effect of regulating, and interfering with, claims by or against an employee benefits plan operating under ERISA." *Id.* at 278. The Government essentially argues that this case, like *Austin v. Dionne*, deals only with State regulation of one party's right to sue another party.

One possible way to reach the conclusion advocated by the government would be to find that preëmption is inapplicable unless the ERISA plan is a party to the suit. Indeed, the overwhelming number of cases dealing with ERISA preëmption involve the plan as a party. *See, e.g., FMC, supra; Travitz v. Northeast Dept. ILGWU Health and Welfare Fund*, 13 F.3d 704, 710 (3d Cir.) (finding that § 1722 was preëmpted where plaintiff attempted to use it to justify her refusal to reimburse ERISA plan's exclusion clause), *cert. denied*, —— U.S. ——, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994); *Electro–Mechanical Corp. v. Ogan*, 9 F.3d 445 (6th Cir.1993) (finding preëmption and upholding plan's right to subrogation); *Provident Life and Accident Ins. v. Linthicum*, 930 F.2d 14 (8th Cir.1991) (same).

■■■ The Government's argument, however, reads too much into *Austin*. There is no reason why the plan must be a party to

the suit in order for ERISA to protect the plan's right to reimbursement. In *Austin*, the district court was careful to note that neither party to that action had argued that the ERISA plan would be "entitled to subrogation of the amounts paid by Dionne to Austin." *Austin*, 909 F.Supp. at 278 n. 7. This is *clearly* not so in the instant case. Indeed, the record in this case unambiguously reveals that the Plan has already notified the Danowskis of its reimbursement claim, which it bases on the Plan language expressly providing that it is entitled to seek reimbursement.[14] *See* Danowski Aff., exhibit B at 49; Silverman Aff., exhibit E.[15] As *Austin* makes clear, a policy of prohibiting double recoveries should "be given full effect, *so long as doing so does not shift liability to the . . . fund operating under ERISA.*" *Austin*, 909 F.Supp. at 278 (emphasis added). This case, therefore, is in harmony with *Austin*, because it is precisely one in which the "application of the prohibition against double recovery [would have] the effect of . . . interfering with claims by . . . an employee benefits plan operating under ERISA. *Id.*

Moreover, the threat of double recovery in this situation is illusory. It is now well settled that plaintiffs, like the Danowskis, can make no future claim of entitlement to any amount demanded by the Plan as reimbursement, because unambiguous subrogation provisions in ERISA plans "must be enforced as written." *Ryan v. Federal Express Corp.*, 78 F.3d 123, 128 (3d Cir.1996). Unless New Jersey's Collateral Source Rule is preëmpted by ERISA in this instance, the Plan will have no fund against which to assert its legitimate claim for reimbursement, and the subrogation scheme contained in the Plan will be frustrated. Accordingly, I conclude that, in this case, New Jersey's Collateral Source Rule, N.J.Stat.Ann. § 2A:15–97, is preëmpted by ERISA.

---

**14.** The Plan excludes payment benefits for "services or supplies for which payment or reimbursement is received by or for the account of the individual as a result of a legal action or settlement." Benefits may be received only if "satisfactory arrangements are made to ensure that any overpayment . . . shall be reimbursed by [the individual]." Danowski Aff. exhibit B, at 49.

**15.** *See also Trustees of Mease Hosp. v. Velardocchia*, 777 F.Supp. 1569 (M.D.Fla.1991) (in suit by hospital to recover unpaid bills, in which Plan's insurer was made a third-party defendant, Florida's Collateral Source Statute is preëmpted when it conflicts with ERISA plan's reimbursement scheme).

## V. Conclusion

For the reasons set forth above, the motion of the defendant, the United States of America, to dismiss the claim of Stanley Danowski for reimbursement of medical expenses for his alleged failure to comply with the notice provisions of the FTCA, and for partial summary judgment, based upon N.J.Stat.Ann. § 2A:15–97, will be denied. The court will enter an appropriate order.

## ORDER

This matter having come before the Court on May 3, 1996, on the motion of defendant, the United States of America, to Dismiss the Claim of Stanley Danowski and for Partial Summary Judgment, Jerrold Allen, Esq., and Robert M. Silverman, Esq., of Soffian & Allen, appearing on behalf of the plaintiffs, Ryan Danowski and Stanley Danowski, and Dorothy Donnelly, Esq., Assistant United States Attorney, of the office of the United States Attorney for the District of New Jersey, appearing for defendant, the United States of America; and,

The Court having considered the complaint, the answer, and the briefs, declarations and affidavits filed in support of and in opposition to this motion, for the reasons set forth in this Court's OPINION filed concurrently with this ORDER;

It is on this 3rd day of May, 1996, ORDERED that:

1. Defendant's motion to dismiss the claim of Stanley Danowski for reimbursement of medical expenses is DENIED; and,

2. Defendants' motion for partial summary judgment based upon the application of N.J.Stat.Ann. § 2A:15–97 is DENIED.